**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KAREN WHELAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-129-R** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. _____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **REVERSED AND REMANDED**.

## I.     PROCEDURAL BACKGROUND

Plaintiff's application for benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 12-24). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 22, 2009, the alleged disability onset date. (TR. 14). At step two, the ALJ determined that Plaintiff had severe impairments of fibromyalgia, affective disorder, anxiety disorder, myoneural disorder, and migraine. (TR. 14)*.* At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 14).

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (TR. 22). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> Perform light work as defined in 20 CFR 404.1567(b) except that she must be able to shift positions between sitting and standing at will and must avoid hazards in the workplace. Moreover, she is limited to simple and some complex instructions with limited interaction with the public.

(TR. 16, 22).

Based on the finding that Plaintiff could not perform her past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC in a series of questions to a vocational expert (VE) to determine if there were other jobs Plaintiff could perform. (TR. 49-50). Given the limitations, the VE testified that Plaintiff could

perform the light, unskilled occupations of merchandise marker, label coder, and routing clerk. (TR. 50). The ALJ adopted the testimony of the VE and concluded that Ms. Whelan was not disabled based on her ability to perform the identified jobs. (TR. 23-24).

## III.   ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) a lack of substantial evidence to support the RFC based on improper consideration of evidence concerning her fibromyalgia and migraine headaches, (2) error in the credibility analysis, and (3) a failure to incorporate mental limitations in the RFC which necessarily impacted the hypothetical question to the VE.

## IV.   STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation and internal quotation marks omitted).

## V.   THE RFC DETERMINATION CONCERNING PHYSICAL IMPAIRMENTS LACKS SUBSTANTIAL EVIDENCE

Ms. Whelan alleges the RFC lacks substantial evidence due to the ALJ's selective review of the medical record and failure to consider significantly probative evidence concerning her fibromyalgia and migraine headaches. The Court should agree.

## A.    Evidence Concerning Fatigue/Fibromyalgia

Ms. Whelan alleges a disability beginning December 22, 2009. The evidence concerning Plaintiff's fatigue begins in May 2010. On May 27, 2010, Dr. Cory Spurlock diagnosed fatigue and myalgia based on Ms. Whelan's complaints that she had suffered fatigue for two years. (TR. 231, 233). In August and September 2010, Plaintiff continued to complain of fatigue, and in October of 2010, Dr. Summer Kirby diagnosed fatigue and prescribed vitamin D. (TR. 277, 280, 397, 611). In November 2010, neurologist Dr. Salman Zubair noted that Ms. Whelan complained of generalized fatigue and stated that in the afternoons, she "felt ready to go to bed." (TR. 280, 397). Dr. Zubair performed a muscle strength test, diagnosed fibromyalgia, and prescribed Lyrica. (TR. 280, 397). In December 2010, Dr. Summer Kirby diagnosed fatigue following Ms. Whelan's complaints. (TR. 394, 448).

In January 2011, Ms. Whelan reported that she had experienced chronic fatigue for two years. (TR. 385). Five months later, Ms. Whelan reported the fatigue had "progressively worsened," and Dr. Jeffry Ostrander opined that Plaintiff had "[f]ibromyalgia leading to significant fatigue and weakness, which has made working difficult for her." (TR. 309, 311). In August through November 2011, Ms. Whelan continued to complain of fatigue, which formed the basis of a related diagnosis. (TR. 359, 376). At the hearing on February 21, 2013, Ms. Whelan testified that by 2:00 or 3:00 in the afternoon, she was so fatigued that she could hardly function. (TR. 43-44).

## B.    Error in the ALJ's Analysis of Plaintiff's Fatigue/Fibromyalgia

In the decision, the ALJ mentions Plaintiff's fatigue, noting three complaints and one diagnosis. (TR. 17-18). But he apparently dismissed the allegations by stating that Dr. Rachel Franklin had "assessed the claimant's working three jobs as the cause for the claimant's fatigue," and that Dr. Summer Kirby had linked the fatigue "as related to low Vitamin D which was replaced." (TR. 18-19).

In discounting the fibromyalgia, the ALJ stated:

> With regard to allegations of disability due to fibromyalgia, the record shows no ongoing complaints or related findings on examination. While the claimant was diagnosed with fibromyalgia in from [sic] November 2010, tender points were only 10 out of 18. Although claimant was started on Lyrica, she had stopped it by January 2011. Nonetheless, she was doing great. Physical findings on examination in March 2011 and in June 2011 were unremarkable. The record shows no further treatment for fibromyalgia.

(TR. 21) (internal citations omitted).

None of these reasons are supported by substantial evidence in the record. Moreover, the ALJ omitted discussing significantly probative evidence related to the fatigue. Thus, the Court should conclude that the RFC lacks substantial evidence.

First, the ALJ stated that Dr. Franklin "assessed the claimant's working three jobs as the cause for the claimant's fatigue." (TR. 18). This quote misrepresents the actual record, where Dr. Franklin noted that the Plaintiff was working three jobs and "had cause for her fatigue." (TR. 342). But Dr. Franklin did not definitively state that the jobs were *the* cause of her fatigue.

Second, as noted by the ALJ, Dr. Kirby prescribed vitamin D, but the physician never stated that the low vitamin D had *caused* Plaintiff's fatigue. (TR. 611). In fact, the record provides contrary support. In October 2010, Dr. Kirby prescribed 50,000 units of vitamin D once a week for 8 weeks, then twice a month. (TR. 611). But only 9 days later, neurologist Dr. Zubair diagnosed fibromyalgia, based partially on Ms. Whelan's complaints of generalized fatigue and statement that in the afternoons, she "felt ready to go to bed." (TR. 280, 397).

Third, the ALJ discounted the fibromyalgia stating that "the record shows no ongoing complaints or related findings on examination." (TR. 21). This statement is inaccurate. Ms. Whelan repeatedly alleged fatigue which was related to her fibromyalgia. *See supra* p. __; *Gilbert v. Astrue*, 231 Fed. Appx. 778, 783 (10th Cir. 2007) (noting that a principal symptom of fibromyalgia is fatigue). In May 2010, Plaintiff began complaining that she had suffered from chronic, ongoing fatigue for at least two years. (TR. 231). These complaints continued through the hearing in February 2013. And contrary to the ALJ's statement of "no related findings on examination," Dr. Ostrander diagnosed "[f]ibromyalgia leading to significant fatigue which has made working difficult for her." (TR. 311).

Fourth, the ALJ noted only "10 out of 18" tender points on examination. (TR. 21). But this statement ignores the fact that the findings were made in conjunction with the neurologist's consideration of severe fatigue. (TR. 280, 397). Together, the symptoms resulted in a diagnosis of fibromyalgia, for which Lyrica was prescribed. (TR.

280, 397). The ALJ acknowledged the Lyrica, but then stated "[Ms. Whelan] had stopped it by January 2011. Nonetheless, she was doing great." (TR. 21) (internal citations omitted). This rationale is misleading. Ms. Whelan had stopped the Lyrica because it was causing additional fatigue, and the doctor's notation that she was "doing great" did not concern the fibromyalgia. (TR. 384).

Finally, the ALJ stated that "[p]hysical findings on examination in March 2011 and in June 2011 were unremarkable." (TR. 21). The ALJ cites "Exhibits 6F and 9F at 43-45. Again, the ALJ misrepresents the record. Exhibit 6 notes "diffuse tenderness to palpitation all over her entire body" and a diagnosis of "[f]ibromyalgia with significant fatigue and weakness, which has made working difficult for her." (TR. 311). And Exhibit 9 at pages 43-45 recounts findings concerning an unrelated impairment.

In addition to misrepresenting the record, the ALJ entirely omits any mention of Plaintiff's testimony at the hearing that by 2:00 or 3:00 in the afternoon, she was so fatigued that "she could hardly function." (TR. 44). This testimony correlates with a statement she had made to Dr. Ostrander in June of 2011, where Plaintiff stated she was "extremely fatigued by the early afternoon." (TR. 309).

In dismissing Ms. Whelan's fibromyalgia and related fatigue, the ALJ selectively relied on the medical record and failed to discuss significantly probative evidence, including Plaintiff's testimony. Although the ALJ is not required to discuss every piece of evidence, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as

7

significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir. 1996). Here, the ALJ failed to do so and the Court should conclude that the decision lacks substantial evidence. See *Clark v. Barnhart*, 64 Fed. Appx. 688, 691-92 (10th Cir. Apr. 22, 2003) (unpublished op.) (ALJ's decision lacked substantial evidence where judge had failed to consider claimant's allegations of fatigue, in light of evidence of numerous complaints to physicians concerning the fatigue and a diagnosis of an impairment which could be reasonably expected to produce the symptoms).

### C.    Evidence of Headaches

Ms. Whelan alleges a "continuing and chronic problem with headaches" supported by significant evidence. (ECF No. 12:14-17). Indeed, such evidence exists. In August 2010, the Plaintiff reported that she suffered from a chronic daily "baseline" headache, which was getting "progressively worse." (TR. 268). She stated that the headache was "there nearly all the time" and that once or twice per month, it became so severe that she had to "stop everything and go to sleep." (TR. 268). She reported that the headaches were associated with dizziness, nausea, vomiting, photophobia, kinesophobia, and osmophobia. (TR. 268). Dr. Peter Schwiebert referred Plaintiff for an MRI of the brain which revealed findings possibly associated with chronic migraines. (TR. 413-14).

In September 2010, Plaintiff continued to complain of continuous headaches and was diagnosed with "complicated migraines." (TR. 273, 277-78). The migraines were noted to be "without aura," but associated with dizziness. (TR. 278). At that time, Dr.

Zubair prescribed Treximet. (TR. 278). In November 2010, Plaintiff stated that the medication had "help[ed] a little" but she was still suffering ongoing, daily, throbbing headaches lasting 4-5 hours. (TR. 280, 397). She noted one or two "bad" headaches the previous month. (TR. 280, 397). On the basis of Plaintiff's complaints, Dr. Zubair diagnosed "chronic migraine headaches." (TR. 280, 397).

In January 2011, Plaintiff complained of having suffered migraines for two years. (TR. 385). Dr. Zubair's notes indicated that at that time, Ms. Whelan had suffered two severe headaches in the prior three months. In June of 2011, "migraine with aura" was diagnosed and during August, September, and October of 2011, Ms. Whelan complained of headaches and pain at the level of 8-9 out of 10 on the pain scale, which interfered with her daily activities and caused at least a 50% decrease in her ability to sleep. (TR. 311, 491, 493, 502, 507, 509). In October 2011, Plaintiff saw Dr. David Ellis for her headaches and on examination, Dr. Ellis noted "Post Occip tenderness." (TR. 510). Almost one month later, Ms. Whelan reported daily headaches with pain a 10 out of 10 with no relief following an injection. (TR. 511).

In April 2012, Plaintiff reported temporary pain relief for 7-8 days, but then the migraines started getting "bad" again, measuring 10 out of 10 on the pain scale and having associated blurry vision and ringing in her right ear. (TR. 526). At the hearing in February 2013, Ms. Whelan testified that day to day, her headaches were "awful" and that she attempted to treat them by wearing a mask that massaged her temples. (TR. 45-47).

### D. Error in the ALJ's Analysis of Plaintiff's Headaches

In his discussion of the medical evidence, the ALJ mentioned the MRI findings revealing chronic migraine, as well as four times that Ms. Whelan had complained of headaches. (TR. 17-19). Ultimately, however, the ALJ dismissed the migraines as a basis for disability and included no related limitations in the RFC, stating:

> With regard to allegations of disability due to migraine with aura, Dr. Zubair found no aura. The record fails to show associated irritability, nausea, vomiting, constipation or diarrhea, photophobia, or ocular symptoms. The objective record fails to show a detailed description from a physician of a typical headache event that includes a description of all associated phenomena. The objective record also fails to show constant and unremitting migraine symptoms. While MRI [sic] in August 2010 indicated possible chronic migraines, when seen in January 2011, the claimant reported only 2 headaches in the prior 3 months and in October 2011 the claimant advised that she had experienced only 3 severe headaches over the prior year.

(TR. 20) (internal citations omitted).

The ALJ's rationales lack substantial evidence and are contradicted by overwhelming and contrary evidence.

First, the ALJ cited Dr. Zubair's finding of no aura and a lack of findings that the headaches had been associated with any migraine phenomena including irritability, nausea, vomiting, constipation or diarrhea, photophobia, or ocular symptoms. (TR. 20). But Dr. Schwiebert noted Plaintiff's reports of migraine with dizziness, nausea, vomiting, photophobia, kinesophobia, and osmophobia. (TR. 268). And in June 2011, Dr. Ostrander diagnosed migraine with aura. Finally, in October of 2011, Dr. David Ellis noted post occipital tenderness on exam. (TR. 510).

Second, the ALJ noted a lack of "constant and unremitting migraine symptoms." (TR. 20). This statement misrepresents the significant medical evidence documenting Ms. Whelan's complaints and various diagnoses for approximately two and one-half years.

Finally, the ALJ relies on reports which document that Plaintiff had suffered only three severe headaches between October of 2010 and October of 2011. (TR. 20). Ms. Whelan apparently reported this to Dr. Kirby, but the ALJ may not reply on this report without reconciling conflicting evidence. *See Brown v. Chater*, 106 F.3d 413, 1997 WL 26559, Westlaw op. at 2) (Jan. 24, 1997) ("It is the province and the duty of the ALJ to reconcile conflicts in the record. . ."). During August of 2010, Ms. Whelan reported a constant headache associated with dizziness, nausea, vomiting, kinesophobia, and osmophobia. (TR. 268). According to Plaintiff, the headaches were so severe that she had to stop everything she was doing and go to sleep. (TR. 268). And in November of 2010, Plaintiff stated that she was experiencing ongoing, daily, throbbing headaches which lasted between 4-5 hours. (TR. 280, 397). The ALJ omitted any discussion of this evidence.

In addition to misrepresenting the record and omitting discussion of significantly probative evidence, the ALJ failed to discuss Ms. Whelan's testimony regarding daily "awful" headaches. (TR. 45).

In discounting Ms. Whelan's fatigue and migraine headaches, the ALJ erroneously engaged in a selective review of the medical record and failed to discuss

significantly probative evidence, including Plaintiff's testimony. As a result, the Court should conclude that the RFC lacks substantial evidence and remand is warranted.

## VI.    ERROR IN THE CREDIBILITY ANALYSIS

As alleged by the Plaintiff, the ALJ's credibility analysis was erroneous.

### A.    ALJ's Duty to Evaluate the Plaintiff's Credibility

The ALJ is required to consider the evidence and determine whether he finds the Plaintiff's allegations credible. *See Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987); Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II and XVI:  Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, Westlaw op. at 1-2 (July 2, 1996) (SSR 96-7p).

The credibility assessment requires consideration of: daily activities, the location, duration, and frequency of the pain and other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms, other treatment or measures to relieve the symptoms, and any other factors concerning Plaintiff's functional limitations and restrictions due to the symptoms. *See Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004); SSR 96-7p, Westlaw op. at 3.

The ALJ is not required to complete a "formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Nevertheless, the ALJ has a duty to "closely and affirmatively link[]" his findings "to substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). In doing so, the ALJ has to "give

specific reasons for the weight given to the individual's statements." SSR 96-7p, Westlaw op. at 4. These reasons should be "articulated in the determination or decision" and "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight" given "to the individual's statements and the reasons for that weight." *Id.*

**B.      Plaintiff's Subjective Allegations**

As discussed, Ms. Whelan complained to various physicians and testified at the hearing, regarding the impact of her fatigue from fibromyalgia and complications from her migraine headaches. (TR. 43-47). And in her written application for disability benefits, Ms. Whelan stated that she suffered from daily migraines and chronic pain and fatigue, and that she had trouble preparing meals and cleaning because the chores required constant breaks. (TR. 156, 158).

**C.      Error in the ALJ's Credibility Analysis**

The ALJ summarized the Plaintiff's testimony as follows:

At the hearing, the claimant testified that she is single and lives with a granddaughter and a friend. She has a driver's license without restriction. She receives child support and food stamps. She had knee surgery in 2007. She can work sitting at a workstation but has trouble sitting and standing. Her spine jerks when standing less than one hour.  She rests 3-4 hours between breakfast time and dinner. Although she tries different modalities to improve back and neck problems, she does not feel better.

(TR. 16).

In a separate analysis discounting Plaintiff's subjective complaints, the ALJ relied on: (1) no restriction of activities of daily living from a treating or examining physician,

(2) a notation from Dr. Franklin that Ms. Whelan's fatigue was caused by working three jobs, and (3) a function report which showed that Ms. Whelan got her granddaughter to school, performed housework, cooked, drove, shopped, attended church, managed her own money, talked on the phone, and cared for animals. (TR. 21-22). According to the ALJ, the activities of daily living were "inconsistent with [Plaintiff's] allegations of incapacitating pain and limitation." (TR. 22).

Ms. Whelan alleges that the ALJ's reliance on the activities of daily living was an insufficient basis on which to discount the credibility, in light of overwhelming and contrary evidence. (ECF No. 12:18-20). Plaintiff also alleges a failure to link the various credibility factors to specific and substantial evidence, as well as a failure to discuss the Plaintiff's testimony at the hearing. (ECF 12: 16-17). The Court should agree.

In discounting the credibility, the ALJ primarily relied on a list of daily activities which Ms. Whelan listed in her written application for benefits. But the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. *Frey v. Bowen*, 816 F.2d. 508, 517 (10th Cir. 1987). Aside from the activities of daily living, the ALJ also stated that "no treating or examining physician has placed any restriction of activities of daily living on [Plaintiff]" and that Dr. Franklin had attributed Plaintiff's fatigue to her working three jobs. (TR. 21). But these rationales are belied by the record. First, Dr. Ostrander opined that Plaintiff had "[f]ibromyalgia leading to significant fatigue and weakness, which has made working difficult for her."

14

(TR. 311). And Dr. Franklin opined that Plaintiff's three jobs provided cause for fatigue, but not that the jobs were *the* definitive cause of the impairment.

The ALJ's stated rationales do not provide substantial evidence to support the credibility determination. In addition, the ALJ failed to discuss a significant amount of probative evidence concerning Plaintiff's fatigue and migraine headaches, including Plaintiff's testimony. As a result, the Court should conclude that the ALJ's erred in his credibility determination.

## VII. NO ERROR IN THE ALJ'S RFC DETERMINATION OR HYPOTHETICAL QUESTION CONCERNING PLAINTIFF'S MENTAL IMPAIRMENTS

Plaintiff alleges that the ALJ failed to include mental limitations in the RFC assessment. (ECF No. 12: 3-14). As a result, Ms. Whelan also alleges that the hypothetical question to the VE was tainted, because it had been based on the allegedly faulty RFC. The Court should reject these arguments.

### A. ALJ's Narrative Duty in Assessing the RFC

In assessing the RFC, the ALJ has a duty to express the claimant's mental limitations in terms of the specific, work-related mental activities he or she is able to perform. *See* Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, Westlaw op. at 6-7 (July 2, 1996) (SSR 96-8p).

### B. Evidence Concerning the Plaintiff's Mental Impairments

Non-examining State Agency consultant Dr. Ron Cummings, completed two reports in his review of Plaintiff's medical records. In the Psychiatric Review Technique (PRT)

form, Dr. Cummings concluded that Plaintiff was "moderately" limited in the areas of activities of daily living and maintaining social functioning. (TR. 469). In the Mental Residual Functional Capacity Assessment (MRFCA), Dr. Cummings made three distinct findings of moderate work-related limitations. In the area of "Understanding and Memory," Dr. Cummings stated that Plaintiff was moderately limited in her ability to understand and remember detailed instructions. (TR. 455). In the area of "Sustained Concentration and Persistence," Dr. Cummings stated that Plaintiff was moderately limited in her ability carry out detailed instructions. (TR. 455). Finally, in the area of "Social Interaction," Dr. Cummings found a moderate limitation in Ms. Whelan's ability to interact appropriately with the general public. (TR. 456).

### C.  No Error in the Consideration of Dr. Cummings' Opinions

The ALJ stated that he gave Dr. Cummings' opinion "great weight." (TR. 22). Accordingly, the ALJ concluded that Plaintiff retained an RFC "limited to simple and some complex instructions with limited interaction with the public." (TR. 16-22). The ALJ related this information in a hypothetical question to the VE and asked him if an individual with those limitations could perform any work. (TR. 49-50). The VE answered affirmatively and identified three jobs that an individual with those limitations could perform. (TR. 50). The VE stated that all three jobs were considered "light," with a specific vocational preparation (SVP) of two. (TR. 50). The VE also stated that his testimony did not conflict with the Dictionary of Occupational Titles (DOT).

Ms. Whelan argues that the RFC for "simple and some complex instructions with limited interaction with the public" did not reflect the findings that she was moderately limited in: (1) the areas of "activities of daily living" and "social functioning," (2) her abilities to understand, remember, and carry out detailed instructions, and (3) her ability to interact appropriately with the general public. (ECF No. 12:7-11). The Court should reject Plaintiff's allegations of error.

First, Dr. Cummings' findings that Ms. Whelan was moderately limited in the areas of "activities of daily living" and "social functioning" were opinions expressed on the PRT form. (TR. 469). The PRT findings are used to assess mental impairments at steps two and three of the sequential evaluation process. SSR 96-8p, Westlaw op. at 4. But the PRT is "not an RFC assessment." *Id.* Thus, the Court should reject Plaintiff's allegations with respect to the generalized findings that she was moderately impaired in the areas of "activities of daily living" and "social functioning." *See Bales v. Colvin*, 56 Fed. Appx. 792, 798 (10th Cir. Aug. 15, 2014) (unpublished op.) ("[T]he ALJ's finding of a moderate limitation at step three does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment. . . .").

Plaintiff's remaining argument concerns Dr. Cummings' findings of moderate impairments in Ms. Whelan's abilities to understand, remember, and carry out detailed instructions and her ability to interact appropriately with the general public. In support, Plaintiff relies heavily on *Jaramillo v. Colvin*, 576 Fed. Appx. 870 (10th Cir. Aug. 27, 2014) (unpublished op.). But the Court should conclude that *Jamarillo* is not applicable here.

In *Jamarillo*, a psychiatrist opined that the plaintiff was moderately limited in his ability to "carry out instructions." *Id.* at 872. The ALJ afforded the psychiatrist's opinion "great weight." *Id.* at 873. In the RFC, the ALJ stated that the plaintiff was limited to performing simple, routine, repetitive, and unskilled tasks. *Id.* at 872. The ALJ then proffered these RFC limitations in a hypothetical question to a VE, who identified jobs the plaintiff could perform. *Id.* at 874.

The plaintiff's challenge hinged on a distinction between work-related skills and mental functions. *Id.* According to the plaintiff, the ALJ had a duty to expressly discuss work-related skills in the RFC and not simply identify a claimant's level of mental functioning. *Id.* at 874-75. The plaintiff alleged that the ALJ had failed in this regard, and had instead only identified a level of mental functioning when he limited the plaintiff to "simple, routine, repetitive, and unskilled tasks." *Id.* at 875. The Tenth Circuit agreed.

In doing so, the Court explained that the limitations to "simple, routine, repetitive, and unskilled tasks" addressed only the plaintiff's level of mental functioning, but failed to reflect the actual work-related abilities which had been deemed moderately impaired. The Court stated:

> The limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments [the psychiatrist] found. Rather the ALJ was required to express those impairments in 'terms of work related functions'. . . As a result, the ALJ's reliance on the jobs the VE identified in the response to the hypothetical was not supported by substantial evidence.

*Id.* at 876 (citation omitted). *Jamarillo v. Colvin* is not applicable in the instant case.

Here, Dr. Cummings found moderate difficulties in Ms. Whelan's ability to understand, remember, and carry out detailed instructions, and interact appropriately with the general public. (TR. 455-56). The ALJ adopted Dr. Cummings' opinion, and assessed an RFC which limited Plaintiff to "simple and some complex instructions with limited interaction with the public." In *Jamarillo*, the Court found that the ALJ's limitations to unskilled work naturally encompassed the ability to "understand, carry out, and perform simple instructions," which conflicted with the psychiatrist's opinion that the plaintiff was moderately limited in his ability to carry out instructions. *Jamarillo* does not indicate whether the plaintiff was moderately impaired in her ability to perform work with detailed versus complex instructions, only that the impairment existed.

But in the instant case, the distinction exists and is material. Dr. Cummings had opined that Ms. Whelan was moderately limited in her ability to understand, remember, and carry out *detailed* instructions. The ALJ accorded the opinion "great weight" and it was adequately reflected in the RFC assessment which limited Plaintiff to performing work with only "simple and some complex" instructions.

The ALJ fulfilled his duty to express the RFC in terms of specific work-related functions and no conflict existed with Dr. Cummings' opinion. Accordingly, the Court should reject Plaintiff's reliance on *Jamarillo v. Colvin* and conclude that the RFC was proper. *See Strobel v. Astrue*, 2011 WL 2135560 (W.D. Okla. May 31, 2011) (unpublished op.) (no error in the RFC assessment limiting plaintiff to "simple and some

complex tasks" in light of opinion that the plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions).

Likewise, the Court should conclude that the RFC for "limited interaction with the public" was consistent with Dr. Cummings' opinion that Plaintiff was moderately limited in this area. *See Heinritz v. Barnhart*, 191 Fed. Appx 718, 2006 WL 2294850, Westlaw op. at 3 (Aug. 10, 2006) (unpublished op.) (RFC assessment for "interact[ion] on a limited basis with the general public" sufficiently accounted for finding that plaintiff was moderately limited in his ability to interact appropriately with the general public).

### B.     No Error in the Hypothetical Question to the VE

Ms. Whelan argues that the deficiency in the RFC affected the resulting hypothetical question to the VE. As a result, Ms. Whelan claims that the ALJ's reliance on the VE's testimony lacks substantial evidence. The Court should reject the claim for two reasons.

First, a hypothetical question need only reflect the impairments borne out by the record. *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). As discussed, the moderate limitations found by Dr. Cummings were adequately reflected in the RFC, thus forming a proper basis for the hypothetical question. *See Carver v. Colvin*, 600 Fed. Appx. 616, 621 (10th Cir. Jan. 20, 2015) (unpublished op.) (no error in the hypothetical question to the VE which reflected RFC limitations deemed sufficient).

Second, the ALJ properly relied on the VE's testimony as a basis for his step five finding. The ALJ has a duty to inquire about and resolve any conflicts between a VE's

testimony regarding an identified job and the description of that job in the DOT. *See Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999) ("before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point.").

Here, the VE testified that an individual with Plaintiff's RFC could perform the jobs of merchandise marker, label coder, and routing clerk. (TR. 49-50). These jobs required "reasoning level 2," which translates to an ability to "carry out detailed but uninvolved written or oral instructions." *Compare* Dictionary of Occupational Titles, 209.587-034 (merchandise marker), 920.587-014 (label coder), 222.587-038 (routing clerk), *to* Dictionary of Occupational Titles, Appendix C: Components of the Definition Trailer.

Upon the ALJ's inquiry, the VE testified that no conflict existed between the identified RFC and the details of the identified job listings. (TR. 50). Thus, the VE's testimony provided substantial evidence for the ALJ to rely on the identified jobs. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (in dictum) (noting, that the ability to carry out "detailed but uninvolved" instructions appeared consistent with an RFC to perform "simple and routine" work tasks.).

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 5, 2016**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on January 22, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE